T.C. Memo. 2015-233

UNITED STATES TAX COURT

JOHN HENRY BESAW, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 893-14.                     Filed December 3, 2015.

John Henry Besaw, pro se.

<u>Alicia H. Eyler</u>, <u>Lisa M. Oshiro</u>, and <u>Julie L. Payne</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies and penalties as follows:

**[*2]**

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2010 | $10,859.44 | $2,171.89 |
| 2011 | 8,715.00 | 1,743.00 |

The issues for decision are whether petitioner is entitled to deductions claimed for wages, travel, and meals and entertainment (M&E) business expenses for 2010 and 2011 beyond those allowed during an audit and whether he is liable for the accuracy-related penalties. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time his petition was filed, petitioner resided in Washington State.

For the years in issue, petitioner worked as an adjunct professor of business at various universities and colleges. He also operated two businesses: (1) John Besaw, Ph.D. (JBP), which provided management and consulting services, and (2) RapidLeanSixSigma (RLSS), which provided coaching and teaching in addition to management and consulting services.

[*3]   Petitioner had a personal checking bank account ending in 9369 in 2010 and 2011.  From this account he made several transfers to an account ending in 9140 that totaled $17,653 in 2010 and $17,005 in 2011.  Petitioner agrees that the transfers were to his daughter, Jenny Besaw.  During the years in issue, petitioner financially supported his daughter in her motorcycle-racing interests.  On her original income tax returns for 2010 and 2011, Jenny Besaw did not report as taxable income any payments that she received from her father.  Later, during the examination of petitioner's returns described below, Jenny Besaw filed amended returns for those years.

Petitioner and his wife jointly filed Federal income tax returns.  On Schedules C, Profit or Loss From Business, they reported the following:

| | JBP | | RLSS | |
|---|---|---|---|---|
| Item | 2010 | 2011 | 2010 | 2011 |
| Gross income | $12,641 | $3,968 | $4,120 | $463 |
| Travel expenses | -0- | -0- | 11,023 | 4,268 |
| M&E expenses | 3,231 | 3,450 | 16,986 | 8,500 |
| Wage expenses | 600 | 1,200 | 28,000 | 36,000 |
| Total expenses (including other expenses) | 12,406 | 11,399 | 73,499 | 73,292 |
| Net profit or (loss) | 235 | (7,431) | (69,379) | (72,829) |

[*4] The Internal Revenue Service (IRS) selected petitioner's 2010 and 2011 tax returns for examination. Petitioner provided to the IRS copies of a 2010 Form 1096, Annual Summary and Transmittal of U.S. Information Returns, and 2010 Forms 1099-MISC, Miscellaneous Income. The Form 1096 reported "John Besaw" as the filer, and the Forms 1099-MISC reported nonemployee compensation from RLSS to recipients as follows:

| Recipient | Compensation |
|---|---|
| Jenny Besaw | $12,000 |
| Phil Borland | 6,000 |
| Dan Martin | 6,000 |
| Annabelle Canlas | 4,000 |
| Christine Young | 3,000 |
| Total | 31,000 |

The IRS attempted to verify the Forms 1099-MISC through searches on its database but found no record of them. Through these searches, however, the IRS was able to conclude that taxpayer identification numbers on some of the Forms 1099-MISC that petitioner presented were erroneous or missing.

The IRS allowed petitioner some business expense deductions for RLSS but disallowed, in their entirety, deductions for wages, travel, and M&E expenses for

**[\*5]** the years in issue. The IRS allowed all JBP deductions, including wages, travel, and M&E expenses.

OPINION

Section 162 allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". For an expenditure to be an ordinary and necessary business expense, generally the taxpayer must show a bona fide business purpose for the expenditure, and there must be a proximate relationship between the expenditure and the business of the taxpayer. See Challenge Mfg. Co. v. Commissioner, 37 T.C. 650, 660-661 (1962); see also sec. 1.162-1(a), Income Tax Regs. Personal, living, and family expenses are generally not deductible. Sec. 262.

Taxpayers are required to maintain sufficient records to establish the amount and purpose of any deduction. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001); sec. 1.6001-1(a), (e), Income Tax Regs. They also have the burden of proving their entitlement to deductions claimed. Rule 142(a); see New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Rockwell v. Commissioner, 512 F.2d 882, 886 (9th Cir. 1975), aff'g T.C. Memo. 1972-133; see also Lyseng v. Commissioner, T.C. Memo. 2011-226, slip op. at 8 ("In general, taxpayers must substantiate claimed deductions with evidence such as

[*6] invoices or receipts that establish that the expenses were actually incurred[.]").  The burden may shift to the Commissioner under section 7491(a)(1) and (2), but petitioner did not satisfy conditions for that shift, particularly the substantiation requirements and maintenance of all required records.  The burden of proof therefore remains with petitioner.

Petitioner repeatedly argues about events that occurred during the audit and complains about the Court's refusal to consider those arguments.  However, this proceeding is a trial de novo, and we do not look behind the statutory notice.  See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974).  The results of audits for other years are also irrelevant.  See Rosemann v. Commissioner, T.C. Memo. 2009-185, slip op. at 13 (citing Auto. Club of Mich. v. Commissioner, 353 U.S. 180 (1957), and Rose v. Commissioner, 55 T.C. 28 (1970), for the proposition that "each taxable year stands alone, and the Commissioner may challenge in a succeeding year what was condoned or agreed to in a previous year").

Petitioner also argues that the record shows that he incurred and paid the RLSS expenses for wages, M&E, and travel and that these expenses were ordinary and necessary for this business.  Focusing on wage expenses, he asserts that his testimony--corroborated by Forms 1099-MISC for 2010 and 2011 and his personal

**[*7]** checking account bank statements for those years--establishes that payments were indeed made to the independent contractors. He alleges that the bank statements show specific information for each payment and also reflect that certain withdrawals were converted to either British pounds for payments to Phil Borland or Philippine pesos for payments to Annabelle Canlas.

Petitioner's description of the record is erroneous. Petitioner claims that his daughter, Jenny Besaw, served as webmaster for one of his business Web sites and that electronic funds transfers, reflected in the bank statements, prove that he paid her $12,000 for her services in both 2010 and 2011. He also asserts in his brief that he provided respondent and the Court with the 2010 and 2011 Schedules C of Jenny Besaw's income tax returns, which show that the $12,000 payment from him for each year was reported as income. Additionally he asserts that the Court was provided with Christine Young's 2010 and 2011 Schedules C, which show that she too reported her RLSS payments as income.

Petitioner did not offer in evidence any Schedules C for Jenny Besaw or Christine Young. There are no Forms 1099-MISC for 2011 in the record--only a summary of the "contract labor" expense that petitioner "reconstructed due to lost working papers". He referred at trial to the Schedules C of his daughter and Christine Young only with relation to their Social Security numbers, but correct

[*8] Social Security numbers for those two does not substantiate the payments made to them or correct inaccurate taxpayer information on other Forms 1099-MISC. Petitioner did not address the discrepancy between the $31,000 of RLSS nonemployee compensation he allegedly reported on the 2010 Forms 1099-MISC and the $28,000 of wage expenses he reported for RLSS for 2010. In any event, neither the 2011 summary nor the Forms 1099-MISC for 2010 establish that the independent contractors were actually paid.

The statements from petitioner's personal bank account are incomplete. They contain four unexplained gaps, each running from one to over two months, within the years in issue. Petitioner did not identify any specific withdrawals or transfers in these bank records as payment to the independent contractors, and the statements do not show any currency conversions.

The parties agree that petitioner's transfers to the bank account ending in 9140 were transfers to Jenny Besaw. Petitioner admits to financially supporting his daughter in her personal endeavors, and he does not establish what portion, if any, of the transfers was not familial. He also failed to corroborate his testimony regarding the business purpose of the transfers with any other evidence, such as Web site documentation or testimony by Jenny Besaw.

**[\*9]**   Applicable regulations define a "transfer of property made in the ordinary course of business" as "a transaction which is bona fide, at arm's length, and free from any donative intent".  Sec. 25.2512-8, Gift Tax Regs.  A transfer of property between family members normally receives close scrutiny, see, e.g., Frazee v. Commissioner, 98 T.C. 554, 561 (1992), but can be treated as one "in the ordinary course of business" if it meets the criteria set forth above, see Stern v. United States, 436 F.2d 1327, 1330 (5th Cir. 1971).  Petitioner, however, did not show that his transfers to his daughter met these requirements.

For the travel and M&E expense deductions, petitioner similarly relies on his testimony while asserting that it is supported by corroborating evidence such as bank statements, credit card statements, receipts, "electronic logs", trip sheets, travel itineraries, statements of expense, a personal calendar, summary sheets, and spreadsheets.  However, some of these professed documents were either not provided or not received in evidence.  Receipts were not provided, and credit card statements failed to show a name or an account number.  Most of the meals were not reflected on his calendars.  Petitioner acknowledges that he did not keep receipts for any meals costing less than $75.  His series of self-generated spreadsheets is insufficient to prove that he actually incurred and paid the reported expenses or that they were ordinary and necessary.  The spreadsheets certainly fail

**[\*10]** to satisfy the stringent requirements of section 274, which call for additional and contemporaneous substantiation establishing the amount, time, place, and business purpose of expenditures. See sec. 274(d) (flush language); see also sec. 1.274-5T(b) and (c)(1) and (2), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46017 (Nov. 6, 1985).

Consequently, there is only petitioner's testimony that he correctly claimed the RLSS deductions for wages, travel, and M&E expenses--but that testimony is implausible and inconsistent. For example, petitioner testified that on January 12, 2010, he was having a business meeting in Tacoma, Washington, but then later attested that he was on a business trip in Spokane, Washington, from January 10-13, 2010. He admitted to claiming meal expense deductions both by specific items and at per diem rates, while offering no evidence to show that he did not duplicate expenses. Petitioner failed to explain credibly how the RLSS expenses were distinguishable from the wages, travel, and M&E expenses claimed for JBP, which were allowed during the audit. He has not persuaded us that certain expenses were not deducted twice.

Petitioner's unsupported, self-serving, and inconsistent testimony does not provide a basis upon which the Court could permit the disallowed deductions. We are not required to accept his testimony, and we do not. See Ruark v.

[*11] Commissioner, 449 F.2d 311, 312 (9th Cir. 1971) (holding that a court is not bound to accept uncontroverted testimony at face value if it is improbable, unreasonable, or questionable), aff'g T.C. Memo. 1969-48; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Bennett v. Commissioner, T.C. Memo. 1997-145, slip op. at 22-23, aff'd without published opinion, 141 F.3d 1149 (1st Cir. 1998). Petitioner's uncorroborated testimony is simply unreliable. His misstatements of the record add further doubt to his credibility. We hold that petitioner did not properly substantiate any of his disputed business expenses and thus is not entitled to any of the disallowed business expense deductions.

Section 6662(a) Penalties

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax which is attributable to a taxpayer's negligence or a substantial understatement of income tax. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties. Higbee v. Commissioner, 116 T.C. at 446-447.

[*12] Respondent asserts that petitioner is liable for the penalties because of substantial understatements of income tax for the years in issue or negligence. Because we have concluded that petitioner is not entitled to any of the disallowed deductions, the understatements for 2010 and 2011 remain in excess of $5,000 (which is greater than 10% of the tax required to be shown on petitioner's return for each year). As these understatements are substantial, respondent's burden of going forward has been satisfied, and we need not address negligence.

Once the Commissioner has met the burden of production, the taxpayer must come forward with persuasive evidence that the penalty is inappropriate--for example, by showing that he or she acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448-449. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner argues that he relied on guidance provided in IRS publications and by an IRS examiner to claim the disallowed deductions. He alleges that the same examiner who had previously accepted his documentation during audits of his 2006 and 2007 tax returns was told by her manager to disallow the deductions in issue. He does not contend that he consulted any other tax professional.

**[\*13]** Neither the IRS' publications nor its agents are authoritative sources of Federal tax law.  See <u>Dixon v. United States</u>, 381 U.S. 68, 73 (1965) ("Congress, not the Commissioner, prescribes the tax laws[.]"); <u>Adler v. Commissioner</u>, 330 F.2d 91, 93 (9th Cir. 1964) ("Nor can any interpretation by taxpayers of the language used in government pamphlets act as an estoppel against the government, nor change the meaning of taxing statutes[.]"), <u>aff'g</u> T.C. Memo. 1963-196.  Moreover, a revenue agent does not have the authority to bind the Commissioner.  See <u>Hodel v. Commissioner</u>, T.C. Memo. 1996-348, slip op. at 21.  By claiming business expense deductions without keeping adequate records, petitioner, a well-educated man, has failed to show that he acted with reasonable cause or in good faith.  We therefore sustain the section 6662(a) penalty for each year.

We have considered other arguments of the parties, but they are irrelevant, unsupported by the record or by authority, or otherwise without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.